## Case No. 14,305.

### In re TYLER.

[4 N. B. R. 104 (Quarto, 27).] [1]

District Court, D. Massachusetts. 1870.

BANKRUPTCY—DISCHARGE—TRADESMAN — FAILURE TO KEEP BOOKS.

A bankrupt, in June, 1867, sold out the whole interest in his store. His petition in bankruptcy was filed in February, 1868. Between June and February he was out of business, except that he bought and sold apples, partly on his account and partly on a joint enterprise with another. He kept no books of account. *Held*, that the omission to keep such books must prevent the granting of his discharge.

[1] [Reprinted by permission.]

In bankruptcy.

G. W. Bartlett, for objecting creditors.

H. G. Parker, for bankrupt.

LOWELL, District Judge. The bankrupt kept a shop in Greenfield until the latter part of June, 1867, when he sold out his whole interest, including the good-will, for about two thousand two hundred dollars. His petition in bankruptcy was made in February, 1868. Between June and February he was out of business, excepting that he bought and sold apples, partly on his own account, and partly on a joint enterprise with one Mansfield. The only objection to the bankrupt's discharge which appears to be important, is that he kept no books of account. He testified that he kept none at all, and a person who was his clerk down to June, 1867, says he did keep one small book, but does not know what was in it. He submits that he was not a merchant or tradesman by reason of his limited dealing in apples, and that his former business had been fully ended and disposed of long before bankruptcy. I have decided, in one case, that a trading which was wholly for cash, and was over long before the bankruptcy, leaving nothing for the assignee to inquire into, either in the way of debts, of credits, or of assets, did not make the bankrupt a tradesman within the act, at the time of bankruptcy (In re Waite [Case No. 17,044]); and, in another case, I held that a clerk who happened to buy and sell certain horses and other personal goods, not intending, when he bought, to sell again, was not a tradesman (In re Rogers [Id. 12,001]). In these cases neither the letter of the law nor its spirit appeared to require a more strict construction, because, in the first, the accounting which the law exacts from traders was unnecessary, and, in the other, the character of a trader had never been assumed.

I regret to be obliged to say, in the present case, that the bankrupt does not clear himself from that objection. As I understand the evidence, the affairs of his original trade are, to some extent, still outstanding. Precisely what he received on selling out, and what he did with the money, are important inquiries to his creditors, which they have been unable to prosecute satisfactorily for the want of regular accounts; and, besides, I should infer that some of the debts proved against him relate to that very trade. The strict law applied to brokers must be enforced by the court until congress shall choose to modify it, and it is within the scope of that law that the final winding up of a trader's business should be recorded, as well as its current course, and, unless a bankrupt can clearly show that everything has been so fully ended that no such account could affect his standing or touch the interests of the creditors at the time of his bankruptcy, I cannot hold him discharged for what was, at the time of the trading, an illegal act of omission. Perhaps it may help to express my opinion on this point if we suppose that full and perfect accounts have been kept and afterwards willfully destroyed before the bankruptcy; if it was certain that evidence was thereby lost, which was of present moment to creditors, the act would be immaterial, but the bankrupt must prove it to be so. Whether the dealing in apples constituted the bankrupt a tradesman within the statute, it is not necessary to decide. The distinction taken in England, whether every one who buys and sells goods is, quo ad hoc, a tradesman under section 39 of our statute [14 Stat. 536], may admit of question. And yet it is very difficult to draw any line founded solely on the smallness of the transactions. It would seem that any one who buys on credit with intent to sell again at a profit, and who has no other regular business, is fairly within the mischief sought to be remedied by the act, though the buying and selling were a mere incident; as if a farmer should buy stock or grain in addition to what he raised—perhaps such a person could not properly be described as a tradesman. I am constrained to say that the omission to keep the books of the admitted trade not being shown to be immaterial to his present creditors, must prevent my granting the discharge.